UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Secret of the Islands, Inc., | ) | Civil Action No.: 2:17-cv-342-BHH |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | **Opinion and Order** |
| Hymans Seafood Company, Inc., Eli | ) | |
| Hyman, Aaron Hyman, Brad Gena, | ) | |
| Holy City Skin Products, Inc., and | ) | |
| U.S. Foods, Inc., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on motions to dismiss the amended complaint filed

by Hymans Seafood Company, Inc., Eli Hyman, Aaron Hyman, Brad Gena, and Holy City

Skin Products, Inc. (ECF No. 49), and by U.S. Foods, Inc. (ECF No. 50), for failure to

state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure

12(b)(6). For the reasons set forth in this order, the motions to dismiss are granted.

## BACKGROUND

Secret of the Islands ("SOTI") manufactures, markets, distributes, and sells salt

scrubs and other body products.[1] SOTI's most successful and recognized products are

its scented salt scrubs, which can be used as hand soap, but have the additional qualities

of exfoliating and moisturizing the skin. SOTI contends that its brand and the products

sold under that brand have garnered significant value and goodwill. For example, through

marketing efforts in the hospitality industry and restroom sample displays, SOTI salt

scrubs and products are sold in more than a thousand locations in more than three-dozen

---

[1] All of the alleged facts found herein are extracted from the amended complaint and construed in the light
most favorable to SOTI.

states and in five countries, generating millions of dollars per year in sales.

SOTI alleges that Hymans Seafood Company, Inc. ("Hymans") is the parent company of Holy City Skin Products, Inc. ("Holy City"), and controls, manages, and oversees the activities of Holy City. Eli Hyman, Aaron Hyman, and Brad Gena (collectively "Individual Hymans Defendants"), are owners and operating partners who oversee and direct the operations of Hymans. SOTI alleges that the Individual Hymans Defendants also control and direct the operations of Holy City. U.S. Foods, Inc. ("U.S. Foods") has distributed and sold salt scrub and skin care products under the "Holy City Skin Care" brand name pursuant to an agreement with Hymans and/or Holy City.

Initially, SOTI had a mutually beneficial relationship with Hymans, which displayed SOTI restroom samples in its Charleston, South Carolina restaurant and sold SOTI salt scrubs in its attached gift shop known as the "Hyman's General Store." For a period of two years, SOTI serviced the restroom display at Hymans, provided sample product, and sold more than $50,000 of product at wholesale to Hymans. SOTI estimates that Hymans generated $100,000 in retail revenue from selling SOTI products.

SOTI alleges that Hymans and its owner-operators, not content to capitalize on this profitable business relationship, engaged in a coordinated effort to misappropriate SOTI goodwill by intentionally copying every material element of its distinctive products, packaging, marketing, and branding. The alleged misappropriation began with Hymans ordering higher quantities of SOTI sample products and less SOTI product for retail, retaining SOTI sample products in Hymans restrooms, and putting the SOTI retail products into jars with a different label for sale in the Hymans gift shop. (ECF No. 47 ¶ 8.) As a result of these alleged actions by Hymans, SOTI terminated its business relationship

with Hymans some time in 2011. (*Id.* ¶¶ 43-45.)

SOTI further alleges that Hymans organized a new subsidiary—Holy City Skin Products, Inc.—to manufacture, distribute, and sell salt scrubs modelled on SOTI products. SOTI contends that Hymans deceptively and unfairly used SOTI's brand-value and goodwill by employing restroom-sample displays materially indistinguishable from SOTI displays, employing the same distinctive slogans[2] that SOTI created to market its products to the hospitality industry, and duplicating SOTI's distinctive packaging. Moreover, SOTI avers that Hymans magnified this misappropriation of SOTI's brand and goodwill by partnering with U.S. Foods, which, with full knowledge of the misappropriation, worked with the other Defendants to distribute restroom-sample "kits" and competing salt scrubs to U.S. Foods' thousands of hospitality industry customers. SOTI alleges that U.S. Foods had specific and actual knowledge of the other Defendants' unlawful activities because, in July 2012, a SOTI manager informed a U.S. Foods manager and U.S. Foods' lowcountry representative that Holy City's products infringed upon and misappropriated SOTI intellectual property and trademarks, and instructed U.S. Foods to cease further participation in those illegal activities. (*Id.* ¶ 62.)

By way of injury, SOTI alleges that Defendants' misappropriation of the SOTI brand and goodwill has decimated SOTI's business, forced SOTI to substantially discount its prices, resulted in millions of dollars in lost revenue and hundreds of lost retail accounts, caused confusion in the marketplace as to the source and origin of the competing

---

[2] In an effort to recruit hospitality businesses to join in its sales model and serve as retailers, SOTI used the following slogans, which it alleges are distinctive and widely viewed by the target industry as identifying SOTI's restroom sampling practices and salt scrubs: "Turn your bathroom into a profit center;" "Turn your bathroom into a display;" "Turn your bathroom into a display and a showroom;" "Turn your bathroom into a showroom;" and "Turn your restroom into a profit center." (ECF No. 47 ¶¶ 31-32.)

products and services, caused consumer complaints to SOTI about inferior and soured product that was in fact produced by Defendants, and made some hospitality businesses unwilling to place SOTI restroom displays due to negative experiences working with Defendants. (*Id.* ¶ 10.) SOTI avers that by far the most substantial injuries to SOTI have occurred in the three years preceding the filing of this lawsuit on February 3, 2017, and continue to occur every day through the present.

SOTI brings seven causes of action pursuant to both state and federal law: (1) unfair competition in violation of the South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a) ("SCUTPA") (*id.* ¶¶ 77-86); (2) unfair competition by false association in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125 ("Section 43(a)") (*Id.* ¶¶87-94); (3) trade dress infringement in violation of the Lanham Act (*id.* ¶¶ 95-105); (4) trademark infringement in violation of the Lanham Act (*id.* ¶¶ 106-16); (5) false advertising in violation of the Lanham Act, South Carolina's Uniform Weights and Measures Law (S.C. Code Ann. § 39-9-200) and accompanying regulations, and the federal Food, Drug, and Cosmetic Act and accompanying regulations (21 C.F.R. § 701.13) (*id.* ¶¶ 117-33); (6)[3] false advertising in violation of SCUTPA (*id.* ¶¶ 134-42); and (7) unjust enrichment (*Id.* ¶¶ 143-46). By way of relief, SOTI seeks: (1) a judgment for actual damages, (2) a judgment for punitive damages, (3) a judgment for treble damages, (4) a judgment for disgorgement of profits, (5) a judgment declaring that this is an exceptional case under 15 U.S.C. § 1117(a), (6) a judgment declaring that Defendants have violated state and federal law as pled in the amended complaint, (7) an order enjoining any further violations

---

[3] The numbering of claims in Plaintiff's amended complaint skips from "fifth" to "seventh." Here, the Court has numbered the claims sequentially, but for ease of reference the Court will hereinafter address the claims in the manner they are titled in the amended complaint—namely, "seventh cause of action" and "eighth cause of action." (*See* ECF No. 47 at 37, 39.)

and requiring Defendants to undertake remedial actions, including the destruction of infringing materials and making disclosures in an effort to ameliorate the harm suffered by SOTI, (8) an order taxing the costs of this action against Defendants, (9) an award of attorney's fees. (*Id.* at 39-40.)

On March 30, 2018, U.S. District Judge David C. Norton entered an order granting in part and denying in part motions to dismiss the original complaint, which had been filed on February 3, 2017. (*See* ECF No. 32.) Judge Norton's order specifically instructed SOTI, in its amended complaint, to delineate which facts apply to what claims as well as which claim is levied against which defendant. (*See id.* at 1, 19.) Plaintiff filed its amended complaint on June 1, 2018. (ECF No. 47.) On June 28, 2018, Hymans, the Individual Hymans Defendants, and Holy City filed a motion to dismiss the amended complaint. (ECF No. 49.) U.S. Foods filed a motion to dismiss the following day, joining all applicable arguments in the Hymans motion to dismiss. (ECF No. 50.) SOTI responded on July 26, 2018 (ECF No. 58), and Defendants filed their respective replies on August 2, 2018 (ECF Nos. 59 & 61). This case was reassigned to the undersigned on September 10, 2018. (ECF No. 65.) The matter is ripe for review and the Court now issues the following ruling.

## STANDARD OF REVIEW

A plaintiff's complaint should set forth "a short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief

that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In considering a motion to dismiss under Rule 12(b)(6), a court "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff . . . ." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court should grant a Rule 12(b)(6) motion if, "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). "The purpose of a Rule 12(b)(6) motion is to test the sufficiency of a complaint; importantly, a Rule 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 243 (internal modifications, quotation marks, and citation omitted).

As previously noted, to survive a Rule 12(b)(6) motion to dismiss, a complaint must state "a *plausible* claim for relief." *Iqbal*, 556 U.S. at 679 (emphasis added). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Stated differently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Still, Rule 12(b)(6) "does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations." *Colon Health Centers of Am., LLC v. Hazel*, 733 F.3d 535, 545 (4th Cir. 2013) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)). "A plausible but inconclusive inference from pleaded facts will survive a motion to dismiss . . . ." *Sepulveda-Villarini v. Dep't of Educ. of Puerto Rico*, 628 F.3d 25, 30 (1st Cir. 2010).

## DISCUSSION

In his March 30, 2018 Order ruling on Defendants' motions to dismiss the initial complaint, Judge Norton held, *inter alia*: (1) all of SOTI's SCUTPA claims were barred by the three-year statute of limitations (ECF No. 32 at 5-6); (2) all of SOTI's Lanham Act claims that accrued before February 3, 2014 were time barred (*id.* at 6-7); (3) all of Plaintiff's Lanham Act claims were subject to dismissal because SOTI had not sufficiently alleged that it possessed valid trademarks, registered or otherwise, in the marketing method and packaging practices that it claims have been and are being misappropriated (*id.* 8-11); (4) many of SOTI's Lanham Act claims were barred by the doctrine of laches because the five-year delay between SOTI's initial contact with US Foods about Hymans' allegedly infringing actions and the filing of this lawsuit was unreasonable and operated to the prejudice of Defendants (*id.* at 11-13); (5) the Lanham Act claims for false advertising, false designation of origin, and trade dress infringement were substantively unsound because SOTI failed to specify "which facts supported which claim or against which defendant each claim is levied," warranting Defendants' requested relief for a more definite statement under Rule 12(e) (*id.* at 13). Judge Norton ordered SOTI to amend the complaint within thirty days, and specifically directed SOTI to "delineate what facts apply

7

to what claims, as well as which claim is levied against which defendant." (*Id.* at 19.)

## I. SCUTPA Claims

Plaintiff's First and Seventh Causes of Action are pled pursuant to the SCUTPA. As explained above, Judge Norton found that SOTI's initial SCUTPA claims were barred by the applicable statute of limitations. The Court finds that the SCUTPA claims in the amended complaint are likewise time barred.

The amended complaint clearly indicates that SOTI knew of Hymans' alleged infringement of SOTI's intellectual property in 2011. (*See* ECF No. 47 ¶¶ 43-44.) SOTI avers that it confronted Eli Hyman about the infringement and terminated its business relationship with Hymans at that time. (*See id.* ¶¶ 40-45.) Moreover, SOTI states that in July 2012, one of its managers informed a U.S. Foods manager, and subsequently U.S. Foods' lowcountry representative, that Holy City's products infringed upon and misappropriated SOTI's intellectual property and trademarks. (*Id.* ¶ 62.) Yet, SOTI did not file suit until February 2017, well outside the three-year limitations period. *See Abrasives-S., Inc. v. Awuko Abrasives Wandmacher GmbH & Co. KG*, 2016 WL 8116893, at *2 (D.S.C. Aug. 17, 2016); S.C. Code Ann. § 39-5-150 ("No action may be brought under [SCUTPA] more than three years after discovery of the unlawful conduct which is the subject of the suit.). Judge Norton concluded as much in his dismissal order. The factual allegations regarding when SOTI knew of the alleged infringement and misappropriation have not changed, and SOTI has not adequately explained why Judge Norton's ruling, which is the law of the case, should not stand.

SOTI argues that the South Carolina Supreme Court's decision in *State ex rel. Wilson v. Ortho-McNeil-Janssen Pharms.*, 777 S.E.2d 176 (S.C. 2015), dictates that

SOTI's SCUTPA claims should survive because, pursuant to the "continuous accrual doctrine," SOTI has alleged an ongoing series of discrete, independently actionable violations of SCUTPA. The Court is not persuaded.

In *Wilson*, the trial court, in granting a SCUTPA plaintiff's motion for a directed verdict on the statute of limitations defense, ruled that one SCUTPA claim was timely because the deceptive and unfair nature of the defendant's conduct could not have been reasonably discovered prior to a date certain that fell inside the limitations period, and that the limitations period on another SCUTPA claim was equitably tolled even though the plaintiff knew or should have known of the violative conduct years prior to the limitations period. 777 S.E.2d 176, 198–99 (S.C. 2015). The South Carolina Supreme Court affirmed the trial court's ruling on the first SCUTPA claim, but reversed on the second SCUTPA claim, finding that it was error to award the plaintiff civil penalties for violations in connection with that claim outside the statute of limitations. *Id.* at 200. In explaining the doctrine of continuous accrual, the *Wilson* court stated, "the language of SCUTPA itself contemplates that an unlawful method, act, or practice may result in multiple statutory violations, and it is the violations themselves that cause the statute of limitations to begin to run." *Id.* Accordingly, "where a claim involves a series of ongoing violations, recovery is limited to a period coextensive with the applicable statute of limitations." *Id.*

The *Wilson* court further explained that the second SCUTPA claim "present[ed] a series of discrete, independently actionable wrongs that are at the core of the typical unfair trade practice action," and noted:

> The principles of this type of continuous accrual respond to
>
>> the inequities that would arise if the expiration of the statute
>> of limitations period following a first breach of duty or instance

of misconduct were treated as sufficient to bar suit for any subsequent breach or misconduct; parties engaged in long-standing malfeasance would thereby obtain immunity in perpetuity from suit even for recent and ongoing malfeasance. In addition, where misfeasance is ongoing, a defendant's claim to repose, the principal justification underlying the limitations defense, is vitiated . . . . [Accordingly,] separate, recurring invasions of the same right can each trigger their own statute of limitations . . . . Generally speaking, continuous accrual applies whenever there is a continuing or recurring obligation: [w]hen an obligation or liability arises on a recurring basis, a cause of action accrues each time a wrongful act occurs, triggering a new limitations period.

*Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 151 Cal. Rptr. 3d 827, 292 P.3d 871, 880 (2013) (quotations and citations omitted) (distinguishing the continuous accrual doctrine from the continuing violation doctrine, which involves a single injury that is the product of a series of small harms, any one of which is not actionable on its own).

777 S.E.2d at 199–200. The series of discrete, independently actionable wrongs in *Wilson* involved a pharmaceutical company's willful failure to disclose known risks and side effects associated with an antipsychotic drug on the drug packaging labels as required by FDA regulations. *Id.* at 182, 186.

The instant case, however, does not present the same risk of inequities that formed the *Wilson* court's reasoning for application of the continuous accrual doctrine. Rather, the allegations in the amended complaint warrant a straightforward application of the discovery rule, which holds that "the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *True v. Monteith*, 489 S.E.2d 615, 616 (S.C. 1997). "The 'exercise of reasonable diligence' means the injured party *must act with some promptness* where the facts and circumstances of an injury place a reasonable person of common knowledge and experience on notice that a claim against another party

might exist." *Id.* at 616–17 (emphasis added) (citing *Dean v. Ruscon Corp.*, 468 S.E.2d 645 (1996); S.C. Code Ann. § 15-3-535. By its own admission, SOTI knew of Hymans alleged misappropriation of SOTI's intellectual property in 2011, and terminated their business relationship as a result. SOTI further confronted U.S. Foods in July 2012 about its participation in Hymans' and Holy City's alleged malfeasance. Yet SOTI declined to bring suit against its competitors until nearly five years later, and the amended complaint provides no indication that SOTI sought to prevent their actions in the interim. To ignore the discovery rule in this case and rely upon the continuous accrual doctrine would be to nullify the statutory requirement that a SCUTPA plaintiff act with "reasonable diligence," and the Court declines to do so. *See* S.C. Code Ann. § 15-3-535. Under the facts as pled, even viewed in the light most favorable to SOTI, the Court agrees with Judge Norton that the "SCUTPA . . . claims accrued by July 2012," and are therefore "barred by the three-year statute of limitations." (*See* ECF No. 32 at 6.)

However, even if the Court were to permit SOTI's SCUTPA claims to proceed for a period coextensive with the three years prior to the filing of its lawsuit, the SCUTPA claims are deficient for a separate and distinct reason. The elements of a SCUTPA claim are "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998); *see* S.C. Code § 39-5-140. SOTI's SCUTPA claims are derivative of its Lanham Act unfair competition, trade dress infringement, trademark infringement, and false advertising claims, in that the alleged acts which form the basis

of the "[u]fair methods of competition and unfair and deceptive acts or practices" (*see* S.C. Code Ann. § 39-5-20(a)) are putatively unlawful because they constitute misappropriation of SOTI's intellectual property rights, which are protected by the Lanham Act.

Trademark infringement and related intellectual property claims can form the basis of an unfair trade practices claim. *See, e.g.*, *Shell Trademark Mgmt. BV v. Ray Thomas Petroleum Co.*, 642 F. Supp. 2d 493, 505 (W.D.N.C. 2009) (holding that Lanham Act violations were deceptive and unfair acts and could substantiate claims brought under North Carolina's Unfair and Deceptive Trade Practices Act); *see also Global Protection Corp. v. Halbersberg*, 503 S.E.2d 483, 487 (S.C. Ct. App. 1998) (stating that the defendant's use of the plaintiff's trademark on product packaging was "[u]nquestionably" a deceptive practice under SCUTPA). "Unfair trade practices are practices which are offensive to public policy or which are immoral, unethical, or oppressive . . . while a deceptive practice is one which has a tendency to deceive." *Bahringer v. ADT Sec. Servs., Inc.*, 942 F. Supp. 2d 585, 593 (D.S.C. 2013) (internal quotation marks and citation omitted). "A plaintiff may show that unfair or deceptive acts or practices have an impact upon the public interest by demonstrating a potential for repetition." *Id.* (citing *Haley Nursery Co. v. Forrest*, 381 S.E.2d 906, 908 (1989)). "The potential for repetition may be demonstrated in either of two ways: (1) by showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence; or (2) by showing the company's procedures create a potential for repetition of the unfair and deceptive acts." *Wright v. Craft*, 640 S.E.2d 486, 502 (S.C. Ct. App. 2006). However, SCUTPA relief "is not available to redress a private wrong where the public interest is

unaffected." *Columbia E. Assocs. v. Bi-Lo, Inc.*, 386 S.E.2d 259, 263 (S.C. Ct. App. 1989).

The SCUTPA states that in construing its prohibition on unfair competition "the courts will be guided by the interpretations given by the Federal Trade Commission and the Federal Courts to § 5(a)(1) of the Federal Trade Commission Act (15 U.S.C. 45(a)(1)), as from time to time amended." S.C. Code § 39-5-20(b); *see also Raco Car Wash Sys., Inc. v. Smith*, 730 F. Supp. 695, 705 (D.S.C. 1989) ("Because SCUTPA is designed to emulate 15 U.S.C. § 45(a)(1), courts are directed to seek guidance from prior judicial interpretations of that act when construing SCUTPA."). Section 45(n) of the Federal Trade Commission Act states that the Commission has "no authority . . . to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is *likely to cause substantial injury to consumers* which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition." 15 U.S.C. § 45(n) (emphasis added). Under § 45(a), "the mere fact that it is to the interest of the community that private rights shall be respected is not enough to support a finding of public interest," rather the public interest "must be specific and substantial." *F.T.C. v. Klesner*, 280 U.S. 19, 28 (1929) (holding that no public interest was invoked where the parties' dispute over the mark "Shade Shop" was "essentially private in nature," and "Shade Shop" had been used in conjunction with the names of the two contending businesses).

With these principles in mind, the Court concludes that SOTI's amended complaint fails to state plausible SCUTPA claims because it does not allege sufficient facts to show an adverse impact on the public interest. SOTI argues that the "potential for repeated deception and confusion of the consuming public" satisfies the public interest element of

SCUTPA's pleading requirements. (*See* ECF No. 58 at 28.) However, Plaintiff's mere allusion to "the public" and "the public interest" within the verbiage of its SCUTPA causes of action (*see* ECF No. 47 ¶¶ 81, 137) is insufficient to transform an "essentially private" business dispute, *see Klesner*, 280 U.S. at 28, into a matter that could cause "substantial injury to consumers," *see* 15 U.S.C. § 45(n). It is accurate that the Court must accept the well-pled facts in the amended complaint as true; however, a court considering a Rule 12(b)(6) challenge "'need not accept the [plaintiff's] legal conclusions drawn from the facts,' nor need it 'accept as true unwarranted inferences, unreasonable conclusions, or arguments.'" *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)) (modification in original).

The SCUTPA claims' invocation of the public interest is formulaic in nature, and the substance of the claims fails to plausibly show that the public will be adversely impacted by Defendants' alleged misuse of SOTI's packaging, marketing, and branding strategies. SOTI has not alleged that Holy City's scrubs are somehow dangerous, or that public confusion regarding the source of salt scrub products has led to material consumer financial loss. Rather, the alleged wrongs arising from Defendants' conduct are the diversion of customers and revenue away from SOTI, and the misappropriation of SOTI's brand recognition and goodwill without compensation. (*See* ECF No. 47 ¶¶ 10-11, 26, 33, 37, 41, 47, 55, 64, 67-68, 71-75.) These are private wrongs and are insufficient to sustain the SCUTPA claims. *See Sinclair & Assocs. of Greenville, LLC v. Crescom Bank*, No. 2:16-CV-00465-DCN, 2016 WL 6804326, at *2 (D.S.C. Nov. 17, 2016) ("It is well established that the act is not available to redress a private wrong where the public interest is unaffected . . . ." (internal modification, quotation marks, and citations omitted)).

"Without proof of specific facts disclosing that members of the public were adversely affected by the unfair conduct or that they were likely to be so affected, the result is a 'speculative claim of adverse public impact [ ] that will not suffice under the [SCUPTA].'" *Id.* at *3 (modifications in original) (quoting *Bracken v. Simmons First Nat. Bank*, No. 6:13-cv-1377, 2014 WL 2613175, at *6 (D.S.C. June 9, 2014)). No such specific facts are alleged here, and the claim of adverse impact to the public is speculative. Accordingly, the motions to dismiss the SCUTPA claims are granted for this independent reason.

## II. Lanham Act Claims

In the previous order of dismissal, Judge Norton found that SOTI's Lanham Act claims accruing prior to February 3, 2014 were barred by the statute of limitations (ECF No. 32 at 6-7), that SOTI had not adequately alleged that it has a valid trademark in the marketing practices and packing that it sought to protect (*id.* at 8-11), that the doctrine of laches barred many of SOTI's Lanham Act claims (*id.* at 11-13), and that Defendants were entitled to a more definite statement because the Lanham Act claims outlined the legal requirements of each claim but failed to specify which facts supported which claim or against which Defendant each claim was levied (*id.* at 13). While the amended complaint certainly improved the clarity of SOTI's Lanham Act allegations, it has not cured the untimeliness of Plaintiff's claims, nor has it shown that SOTI has protectable intellectual property rights in its marketing and packaging methods.

### A. Statute of Limitations

The Lanham Act does not expressly include a statute of limitations. However, the Fourth Circuit Court of Appeals has held that the statute of limitations for analogous state law causes of action are properly applied to Lanham Act claims. *See PBM Prod., LLC v.*

*Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011) ("[A]s courts have long held, it is proper to use the analogous state limitations period for Lanham Act suits because the Act provides no express statute of limitations."). In South Carolina, the relevant statute of limitations is three years. *See* S.C. Code Ann. § 15–3–530 (three-year limitations period for actions other than for recovery of real property). As Judge Norton noted in his order, the instant case was initiated on February 3, 2017, so SOTI's Lanham Act claims must have accrued on or after February 3, 2014 to be viable. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) (holding that the statute of limitations does not shield a defendant from liability for Lanham Act violations occurring within the limitations period). This procedural limitation applies to counts two (unfair competition by false association), three (trade dress infringement), four (trademark infringement), and five (false advertising), all of which are premised upon alleged violations of the Lanham Act.

### B. Doctrine of Laches

"In a trademark case, courts may apply the doctrine of estoppel by laches to deny relief to a plaintiff who, though having knowledge of an infringement, has, to the detriment of the defendant, unreasonably delayed in seeking redress." *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 461 (4th Cir. 1996) (citing 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition, § 31.02 (3d ed. 1995) ("Estoppel by laches [is] defined as that type of delay in filing suit which causes prejudice to defendant and when weighed with all other relevant equitable factors, results in a bar to relief, either injunctive or monetary, or both.")). "Because the Lanham Act does not include a limitations period, courts use the doctrine of laches to address the inequities created by a trademark owner

who, despite having a colorable infringement claim, allows a competitor to develop its products around the mark and expand its business, only then to lower the litigation boom." *What-A-Burger Of Virginia, Inc. v. Whataburger, Inc. Of Corpus Christi, Texas*, 357 F.3d 441, 449 (4th Cir. 2004) (citing *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 824 (7th Cir.1999) (affirming district court's application of laches where plaintiff "permitted [defendant's] advertising and the development of its products to go unchecked" and "sat idly by and chose not to challenge [defendant's] use of [the mark] with respect to its products")). The amended complaint indicates a nearly five-year delay between the *latest* point at which SOTI knew of Holy City's allegedly infringing products and marketing practices, and the filing of the instant action. (*See* ECF No. 47 ¶ 62 (describing phone calls wherein a SOTI manager confronted U.S. Foods representatives about the allegedly infringing nature of Holy City and Hymans' products and practices, and "instructed U.S. Foods to cease any further participation in those illegal activities").)

"In determining whether laches may operate as a defense to an infringement claim, a court should ordinarily consider (1) whether the owner of the trademark knew of the infringing use, (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable, and (3) whether the infringing user has been unduly prejudiced by the owner's delay." *Sara Lee*, 81 F.3d at 461 n.7 (citing *Brittingham v. Jenkins*, 914 F.2d 447, 456 (4th Cir. 1990)). It is uncontested that SOTI knew of the putatively infringing conduct as early as 2011, and certainly no later than July 2012. The amended complaint includes no allegation that Defendants' infringing conduct has materially changed since July 2012. Rather, SOTI seeks to mitigate the timeliness issue by averring that its injuries are ongoing and have been the most acute since early 2014.

(ECF No. 47 ¶¶ 10, 76, 81.)

With respect to SOTI's delay in filing suit, the Court agrees with Judge Norton that the delay was unreasonable under the circumstances. In the Fourth Circuit, "When a false advertising plaintiff files suit outside of the statute of limitations, both elements of laches—unreasonable delay and prejudice—are strongly presumed." *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 121 (4th Cir. 2011) (citing *EEOC v. The Great Atlantic & Pacific Tea Co.*, 735 F.2d 69, 80 (3d Cir.1984) (finding that once the statute of limitations has expired, the defendant "enjoys the benefit of a presumption of inexcusable delay and prejudice")). But the Court need not solely rely upon such a presumption, because the face of the complaint sets forth a series of events amounting to unjustifiable delay, which would result in undue prejudice to Defendants if the Lanham Act claims were allowed to proceed.

Upon confirming its suspicions that Hymans was misappropriating its salt scrub products, SOTI terminated its profitable business relationship with Hymans in 2011. (ECF No. 47 ¶ 44-45.) If, as SOTI alleges, Hymans continued such misappropriation after being confronted by SOTI (*see id.* ¶ 45), it is unclear why SOTI did not file suit at that time, given that "financial losses . . . began as early as 2011" (*id.* ¶ 75). Perhaps the impact of the misappropriation, in SOTI's view, was not sufficiently large to justify the expense and inconvenience of litigation. But assuming it was reasonable to forego filing an infringement/unfair competition action at that time, it must have set off alarm bells for SOTI when, in July 2012, it subsequently discovered that a major corporate entity in the hospitality industry, U.S. Foods, was distributing Hymans' now fully-branded competing product line—Holy City Skin Care—in notably similar mason-jar packaging (*see id.* ¶ 9).

18

If SOTI believed its intellectual property rights were being infringed, or that Defendants' methods of competition were unfair, it should have filed suit in reasonably expeditious fashion. After all, SOTI had knowledge of a direct competitor using its putatively protected packaging and marketing methods in a commercially sophisticated fashion *to target the very same group of consuming businesses and end-users that SOTI was targeting* (*see id.* ¶¶ 51-53, 56, 61 (noting competing focus on hospitality industry and bathroom displays))—there was no further ripening of its infringement/unfair competition claims to occur because the reputed likelihood of confusion already existed. Instead, SOTI waited until February 2017 to file a suit seeking treble damages on every relevant claim, only "lower[ing] the litigation boom" once Holy City's product line and business were successfully established. *See What-A-Burger*, 357 F.3d at 449. The Court finds that this delay was unreasonable, and would have the perverse effect of dramatically multiplying the damages to which SOTI might be entitled if the Lanham Act claims were permitted to proceed, damages which could have been easily mitigated if SOTI brought its claims when it knew they were ripe.

Regarding prejudice to Defendants, the Court finds that this prong of the laches defense is also satisfied by facts evident on the face of the amended complaint. "A defendant suffers economic prejudice when it relies on the trademark owner's inaction by developing a valuable business around the trademark." *Ray Communications, Inc. v. Clear Channel Communications, Inc.*, 673 F.3d 294, 305 (4th Cir. 2012) (citing 6 McCarthy § 31:12 ("Laches is a good defense if plaintiff's long failure to exercise its legal rights has caused defendant to rely to its detriment by building up a valuable business around its trademark.")). SOTI alleges that Hymans began its salt scrub business in 2011,

created Holy City, began manufacturing, distributing, and selling competing products, marketed its products to hospitality industry retailers and end-user consumers, and partnered with U.S. Foods to do the same on a continuing basis since that time. (ECF No. 47 ¶¶ 40-41, 46-47, 54-55.) Plaintiff further avers that by building a business model dependent upon SOTI's trade dress and trademarks, Defendants have successfully supplanted hundreds of sales accounts, and diverted millions of dollars in revenue. (*Id.* ¶¶ 10, 51-53, 69.) Thus, the amended complaint demonstrates that Defendants, relying upon SOTI's inaction, built a valuable business over the course of approximately six years, a venture that axiomatically required the commitment of substantial economic resources. To permit Lanham Act attacks only now that Holy City's business is a successful and threatening competitor would result in undue economic prejudice. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191 (1986) (affirming district court's finding that Lanham Act defendant had been prejudiced by plaintiff's delay of more than five years to assert its claim, where defendant "committed massive resources to best exploit a marketing strategy," and the delay "precluded the possibility that [defendant] could effectively adopt an alternative marketing position").

SOTI argues that adjudication of the laches defense involves a fact-sensitive balancing of the equities that is inappropriate for disposition at this stage of the proceedings. (*See* ECF No. 58 at 13-15.) So much is true in the typical case, "But in the relatively rare circumstances where facts sufficient to rule on an affirmative defense are alleged in the complaint, the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (reversing trial court's dismissal pursuant to the statute of limitations of breach of contract action

because the precise dates necessary to determine the merits of the defense were not apparent on the face of the complaint). As one district court has helpfully explained: "Since laches is an affirmative defense, [p]laintiffs are not required to anticipate or plead around it in their complaint, although they can plead themselves out of court by setting forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely." *Flentye v. Kathrein*, 485 F. Supp. 2d 903, 916 (N.D. Ill. 2007) (quotation marks and citation omitted). The Court finds that this is the rare case where Plaintiff has, indeed, pled itself out of court by demonstrating unreasonable delay and undue prejudice to Defendants on the face of the amended complaint. Accordingly, the surviving Lanham Act claims are dismissed for this reason.

### C. Substantive Lanham Act Allegations

In dismissing SOTI's initial Lanham Act claims, Judge Norton stated:

> To the extent that SOTI is bringing Lanham Act claims for the personal care products themselves, SOTI may assert claims for trademark infringement that accrued after February 2014. However, the bulk of SOTI's claims appear to be premised on the marketing method and packaging practice of packing personal skin care products in mason jars—not on the products themselves.
> . . . .
>
> The court reiterates that SOTI still has not adequately alleged that it has a valid trademark in the marketing method. The complaint is devoid of sufficient allegations that SOTI has a valid trademark at all, registered or otherwise.
> . . . .
>
> To the extent that SOTI is asserting Lanham Act claims for aspects of its marketing method or packaging that it actually has trademarks for, SOTI has standing under the Lanham Act. But as set forth in the complaint, the court cannot discern what SOTI has trademarks for—if anything. Because SOTI has not sufficiently alleged that it "possesses" a mark, the court grants the motion to dismiss on all of the Lanham Act claims.

(ECF No. 32 at 9, 10, 11.) Likewise, the Court finds that the Lanham Act claims in the

amended complaint have not sufficiently alleged that SOTI possesses protectable intellectual property rights for the aspects of its marketing method and packaging that Defendants allegedly misappropriated. Accordingly, all Lanham Act claims premised upon SOTI's marketing method and packaging are dismissed for lack of standing.

"A plaintiff alleging causes of action for trademark infringement and unfair competition must prove (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred 'in commerce'; (4) that the defendant used the mark 'in connection with the sale, offering for sale, distribution, or advertising' of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers." *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 364 (4th Cir. 2001) (citing 15 U.S.C. §§ 1114, 1125(a); *Lone Star Steakhouse & Saloon v. Alpha of Virginia*, 43 F.3d 922, 930 (4th Cir. 1995)). The United States Supreme Court has explained:

> The Lanham Act was intended to make "actionable the deceptive and misleading use of marks," and "to protect persons engaged in . . . commerce against unfair competition." 15 U.S.C. § 1127. While much of the Lanham Act addresses the registration, use, and infringement of trademarks and related marks, § 43(a), 15 U.S.C. § 1125(a) is one of the few provisions that goes beyond trademark protection. As originally enacted, § 43(a) created a federal remedy against a person who used in commerce either "a false designation of origin, or any false description or representation" in connection with "any goods or services." 60 Stat. 441. As the Second Circuit accurately observed with regard to the original enactment, however—and as remains true after the 1988 revision—§ 43(a) "does not have boundless application as a remedy for unfair trade practices," *Alfred Dunhill, Ltd. v. Interstate Cigar Co.*, 499 F.2d 232, 237 (C.A.2 1974). "[B]ecause of its inherently limited wording, § 43(a) can never be a federal 'codification' of the overall law of 'unfair competition,'" 4 J. McCarthy, Trademarks and Unfair Competition § 27:7, p. 27–14 (4th ed. 2002) (McCarthy), but can apply only to certain unfair trade practices prohibited by its text.

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28–29 (2003). In *Dastar*,

the Supreme Court held that Section 43(a) creates a federal cause of action for traditional trademark infringement of *unregistered* marks, which was broad enough to encompass passing off and reverse passing off alike.[4] *Id.* at 29–30. The closest that SOTI comes to stating a plausible claim to relief based upon misappropriation of its intellectual property is its reverse passing off theory, where it alleges that Hymans, in 2011, took some amount of SOTI's sample salt scrub product and placed it in jars with a different label for sale in the Hymans General Store. (*See* ECF No. 47 ¶ 8.) However, the Court has already concluded that claims based on that theory are barred by the applicable statute of limitations and the doctrine of laches.

The gravamen of SOTI's Lanham Act claims (unfair competition, trade dress infringement, and trademark infringement) is that its ***marketing system*** of providing salt scrub samples in hospitality business restrooms with signs encouraging users to purchase retail product in attached shops, its ***marketing slogans*** such as "Turn your restroom into a profit center," and its ***packaging*** the product in mason jars with an attached wooden spoon affixed by an elastic tie around the neck of the jar: (1) are inherently distinctive, or are descriptive but have acquired secondary meaning in the marketplace; (2) constituted protectable trade dress; and (3) constituted a trademark(s). (*See* ECF No. 47 ¶¶ 51-53, 87-116.) But while SOTI has invoked the formulaic elements of these claims, the amended complaint is still devoid of facts sufficient to show that the marketing system, marketing slogans, and mason-jar packaging were anything other than generic, functional sales modalities. In this way, SOTI has alleged, but not shown, that it

---

[4] "Passing off" is misleadingly presenting one's product as the product of another (e.g. Budweiser selling its beer as Samuel Adams Boston Lager), whereas "reverse passing off" is presenting another's product as one's own (e.g. selling Boston Lager as Budweiser's beer). *See Dastar*, 539 U.S. at 32.

is entitled to relief. *See Iqbal*, 556 U.S. at 679.

"A trademark is defined in 15 U.S.C. § 1127 as including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). Generic marks are not protectable. *See id.* "An identifying mark is distinctive and capable of being protected if it either (1) is inherently distinctive or (2) has acquired distinctiveness through secondary meaning." *Id.* at 769 (citing Restatement (Third) of Unfair Competition § 13, pp. 37–38, and Comment a (Tent. Draft No. 2, Mar. 23, 1990)). Moreover, "eligibility for protection under § 43(a) depends on nonfunctionality." *Id.*

SOTI has alleged that its marketing method of staging open bowls of sample salt scrubs next to restroom sinks with a sign on the mirror advertising products for sale, packaging in mason jars, and marketing slogans encouraging businesses to participate in a mutually profitable venture, are protectable marks. These sales modalities appear to have facilitated SOTI's admirable growth and profitability (*see* ECF No. 47 ¶¶ 4-5), but the amended complaint still lacks sufficient facts to show that they serve to identify SOTI's goods and services as distinct from those of competing body product manufacturers. In other words, SOTI has still not adequately alleged that it possesses even an unregistered "mark." Accordingly, the trademark infringement (count four) and unfair competition (count two) claims are dismissed.

In its opposition brief, SOTI argues that it need not possess a protectable mark in order to pursue an unfair competition claim under the Lanham Act. (ECF No. 58 at 29–

31.) SOTI relies on the Fourth Circuit's holding in *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697 (4th Cir. 2016), to support this proposition. However, the holding in *Belmora* does not support the kind of open-ended unfair competition claims that SOTI suggests are permissible under Section 43(a). Rather, the court in *Belmora* considered the question whether a litigant possessing a foreign trademark, which it had not used in U.S. commerce, could use that mark as a basis to seek the cancellation of a U.S. registered mark. 819 F.3d at 706. Both parties to the litigation had registered trademarks. The *Belmora* court held that a litigant need not have used a foreign mark *in the U.S.* in order to pursue an action under Section 43(a). *Id.* at 708–09. This holding does not open the door to "boundless application [of Section 43(a)] as a remedy for unfair trade practices." *See Dastar*, 539 U.S. at 29.

The trade dress allegations are similarly deficient. "To prove a case of trade dress infringement, a party must demonstrate that (1) its trade dress is primarily non–functional; (2) the alleged infringement creates a likelihood of confusion; and, (3) the trade dress either (a) is inherently distinctive, or (b) has acquired a secondary meaning." *Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 368 (4th Cir. 1999) (citing *Two Pesos*, 505 U.S. at 769). SOTI's trade dress claim fails on the first element. Even accepting the allegations in the amended complaint as true, and construing them in SOTI's favor, the Court cannot gloss over the clear functionality of the display and packaging features at issue. Using a bowl to display samples with an advertisement nearby is not unique, nor is putting body products into mason jars for retail. The alleged trade dress is functional[5] and/or generic; therefore, the trade dress infringement claim

---

[5] Though not re-alleged in the amended complaint, Plaintiff's eleventh claim for relief in the initial complaint, which Judge Norton dismissed (*see* ECF No. 32 at 17-18), stated that "Plaintiff's marketing and sales

(count three) is dismissed.

SOTI correctly argues that ownership of a protectable mark or trade dress is not a prerequisite to a false advertising claim (*see* ECF No. 58 at 29), but its false advertising claim fails for a different reason. "To establish a claim under the false or deceptive advertising prong of § 43(a) of the Lanham Act, a plaintiff must prove: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a loss of goodwill associated with its products." *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 819 (7th Cir. 1999).

SOTI's false advertising claim is premised on the fact that Holy City labels its salt scrub jars with a gross weight of 780 grams, whereas SOTI labels its packing using the net weight of the salt scrub itself, which is 455 grams. (ECF No. 47 ¶ 119.) The amended complaint asserts that Holy City's labeling practice is unlawful because, "By using gross rather than net weight, Holy City has deceptively included the glass jar in the statement of weight, which constitutes some 40% of the 780 total grams stated on the Holy City label, leading consumers to mistakenly believe that they are purchasing more of the salt

---

methods are unique and original and have been filed under a utility patent application with the . . . United States Patent and Trademark Office." (ECF No. 1 ¶ 130.) "A utility patent is strong evidence that the features therein claimed are functional. If trade dress protection is sought for those features the strong evidence of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection." *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 29–30 (2001). SOTI never alleged that it in fact *obtained* a utility patent, but the fact that it sought patent protection for its marketing and sales methods only lends further credence to the conclusion that the trade dress in question is functional.

scrub product than they are." (*Id.* ¶ 121.) In this cause of action, SOTI references South Carolina's Uniform Weights and Measures Law—which incorporates the National Institute of Standards and Technology's "Handbook 130"—and implementing regulations to the federal Food, Drug, and Cosmetic Act, for the general requirement that consumer packing must state the *net quantity* of contents within a packaging container. (*Id.* ¶¶ 122-24.)

First, the false advertising claim fails to allege sufficient facts to show that Holy City made a "*false* statement of fact." *See Hot Wax*, 191 F.3d at 819 (emphasis added). The face of the amended complaint shows that the challenged packing label indicates a "Gross Wt." of 780 grams (*see id.* ECF No. 47, Fig. 1), and SOTI has not averred that this measurement is inaccurate. Second, to the extent that SOTI is seeking to independently enforce Holy City's violation of packaging regulations that require the use of net weight instead of gross weight, there is no private right of action to enforce such alleged violations.[6] Accordingly, the false advertising claim (count five) is dismissed.[7]

### III. Unjust Enrichment Claim

SOTI also advances an unjust enrichment claim. Despite Judge Norton's repeated admonitions to specify which alleged facts apply to what claims, as well as which claim(s) are levied against which Defendants (*see* ECF No. 32 at 1, 2 n.1, 5 n.2, 13, 19), the amended complaint amorphously incorporates every preceding paragraph into each cause of action and states that every claim is asserted against "All Defendants." (*See* ECF No. 47 ¶¶ 77, 87, 95, 106, 117, 134, 143.) The unjust enrichment claim is particularly

---

[6] Moreover, SOTI expressly eschews an interpretation of the amended complaint that would read count five as a cause action pursuant to the South Carolina Uniform Weights and Measures Act. (*See* ECF No. 58 at 36-37.)

[7] The same reasoning provides an independent basis upon which to dismiss SOTI's seventh cause of action, which is a false advertising claim pursuant to SCUTPA. (*See* ECF No. 47 ¶¶ 134-42.)

vague, consisting of three sentences stating the formulaic elements of an unjust enrichment cause of action (*see id.* ¶¶ 144-46), namely: (1) a benefit conferred upon the defendant by the plaintiff; (2) realization of that benefit by the defendant; and (3) retention by the defendant of the benefit under conditions that make it unjust for him to retain it without paying its value. *Columbia Wholesale Co., Inc. v. Scudder May N.V.*, 440 S.E.2d 129, 130 (S.C. 1994).

The factual allegations that most naturally fit within this claim are, again, the reverse passing off theory that Hymans sold SOTI's sample product in differently labelled jars. But any claim premised on that theory is, as has already been explained, time barred. Put simply, the unjust enrichment claim is dependent upon SOTI's Lanham Act and SCUTPA theories, all of which are procedurally and/or substantively deficient. Therefore, the unjust enrichment claim (count eight) is dismissed.

## CONCLUSION

For the reasons set forth above, Defendants' Rule 12(b)(6) motions to dismiss (ECF Nos. 49 & 50) are GRANTED. This action is dismissed with prejudice.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

February 25, 2019
Charleston, South Carolina